

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**09/04/2012**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 03-44908** |
| **TRI-UNION DEVELOPMENT** | § | **CHAPTER  11** |
| **CORPORATION** | § | |
| | § | |
| Debtor(s). | § | **JUDGE ISGUR** |
| | § | |
| | § | |
| **PALM ENERGY GROUP, LLC,** *et al* | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | **ADVERSARY NO. 11-3032** |
| | § | |
| **GREENWICH INSURANCE COMPANY,** | § | |
| *et al* | § | |
| | § | |
| Defendant(s). | § | |

## <u>MEMORANDUM OPINION</u>

As part of the confirmation of Tri-Union Development Corporation's chapter 11 Plan, parties to this adversary proceeding entered into the Turnkey Agreement and Term Sheet.  The Turnkey Agreement and Term Sheet provided for the plugging and abandonment ("P&A") of Tri-Union's offshore oil and gas properties in accordance with federal regulations.  In the Term Sheet, Tri-Union, Palm Energy Partners, LLC ("PEP"), Greenwich Insurance Company, Apache Corporation, the United States Department of the Interior, Minerals Management Service (now the Bureau of Ocean Energy Management), and several other parties agreed that PEP would be paid to perform the P&A obligations.  Greenwich and Apache provided escrow funds for completion of the P&A obligations.

1 / 29

The Turnkey Agreement, entered into by Tri-Union, PEP, and Palm Energy Group ("PEG"), a wholly owned subsidiary of PEP, provides more specific terms for the completion of the P&A obligations.  The Turnkey Agreement gives the signatories to the Term Sheet the right to demand performance by PEG of its obligations under the Turnkey Agreement.

Under the confirmed chapter 11 Plan, PEP was appointed plan agent.  The Plan, Turnkey Agreement, Term Sheet, and escrow agreements established escrow accounts to pay for the performance of the P&A obligations.

The P&A obligations were to be performed in two phases.  The first phase was funded by the Phase 1 Escrow and has been completed.  The second phase was to be funded by the Phase 2 Escrow and the Apache Escrow.  The escrow agent for the Phase 2 Escrow is Greenwich, and the escrow agent for the Apache Escrow is Apache.

PEG, PEP, and Tri-Union now sue Greenwich and Apache for the alleged breach of their obligations under the Turnkey Agreement and Term Sheet.  The parties have asserted various counterclaims and cross-claims against each other.  Additionally, Greenwich sues the Bureau of Ocean Energy Management ("BOEM") and certain other governmental entities and officials as third-party defendants.  Greenwich asserts claims for breach of contract and declaratory judgment against BOEM, arguing that BOEM breached its alleged duty under the Term Sheet to enforce the timely performance of the P&A obligations.  Greenwich also seeks declaratory judgment regarding its asserted subrogation rights.

The Bureau of Ocean Energy Management, the United States Department of Interior, Michael Bromwich, and Kenneth Lee Salazar move for dismissal of this adversary proceeding.  For the purposes of convenience, the Court deals directly with the claims asserted against BOEM.  For the reasons set forth in this memorandum Opinion, all claims against BOEM are

dismissed.   Because the claims against the United States Department of Interior, Michael Bromwich, and Kenneth Lee Salazar are wholly dependent on the claims against BOEM, they are also dismissed.

This memorandum opinion concerns BOEM's motion to dismiss, for summary judgment, or, alternatively, to defer to the Interior Board of Land Appeals.

BOEM argues that it had no duty to Greenwich under the Term Sheet to enforce the timely performance of the P&A obligations.   Additionally, BOEM argues that Greenwich's subrogation claim is premature.

There is no genuine dispute of material fact as to whether BOEM owed any duty to Greenwich under the Term Sheet to enforce the timely performance of the P&A obligations. BOEM did not have such an obligation.   Greenwich's claim for declaratory judgment as to its subrogation rights has generally been denied by a separate order issued on this date. Accordingly, the Court grants BOEM's motion for summary judgment as to all claims.

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## Bankruptcy Court's Authority

This Court may not issue a final order or judgment in matters that are within the exclusive authority of Article III courts.  *Stern v. Marshall*, 131 S.Ct. 2594, 2620 (2011).  The Court may, however, issue interlocutory orders, even in proceedings in which the Court does not have authority to issue a final judgment.  A partial summary judgment is an interlocutory motion, and the constitutional limitations on the Court's authority to enter final judgments are not

implicated.  *West v. Peterson (In re Noram Res., Inc.)*, 2012 WL 2571154, at *1 (Bankr. S.D. Tex. July 2, 2012); *see West v. WRH Energy Partners LLC (In re Noram Res., Inc.)*, 2011 WL 6936361, at *1 (Bankr. S.D.Tex. Dec. 30, 2011) (stating that interlocutory motion to dismiss does not implicate constitutional limitations on Court's authority).

### Background

Tri-Union is an oil and gas exploration, development, and production company with oil and natural gas reserves in the Gulf of Mexico.  Pursuant to federal regulations, Tri-Union was obligated to plug and abandon certain offshore wells and to perform various other decommissioning activities ("P&A obligations") that were intended to alleviate safety and environmental risks.  Greenwich's Ex. A, at 10; Greenwich's Ex. H; *see* 30 C.F.R. § 250.101 *et seq.*; § 250.1700 *et seq.* (Subpart Q).  Tri-Union owed the P&A obligations to the Minerals Management Service (now BOEM).  Greenwich's Ex. A, at 10.

Apache is a predecessor in interest to Tri-Union.  *In re Tri-Union Development Corp.*, 314 B.R. 611, n.4 (Bankr. S.D. Tex. 2004).  Apache filed a proof of claim against Tri-Union. The proof of claim demonstrates that—as between Tri-Union and Apache—Tri-Union had the primary duty to perform the P& Obligations.  *See* Exhibit 1 to Proof of Claim No. 251 filed in case 03-44908.  The issue is not one in genuine dispute. Fed. R. Bankr. P. 7056.

Greenwich issued surety bonds in favor of MMS to assure Tri-Union's obligation to satisfy the P&A obligations.  Greenwich's Ex. H.  Greenwich issued the following bonds:

| Bond Number | Amount | OCS Lease/ROW Number | Area/Block |
|:---:|:---:|:---:|:---:|
| 45035257 | $2,500,000 | OCS-G 01249 | ST 162 |
| 45035256 | $1,100,000 | OSC-G 01249 | ST 162 |
| 45035259 | $300,000 | OSC-G 11181 | HI A 537 |

BOEM's Exs. 8 & 9; Greenwich's Exs. H, I & J.  Greenwich issued #45035257 on June 27, 2001, to cover Lease OCS-G 1249.  BOEM's Ex. 8.  The bond stated:  "The Surety does hereby absolutely and unconditionally bind itself to the United States of America acting through and by the Minerals Management Service (MMS), or such other official designated by the Secretary of the Interior for this purpose, for the payment of all of the cost of the plugging and abandonment Obligations."  BOEM's Ex. 8, at 12.  Bond #45035256, issued on the same day for the same lease, contained identical language.  BOEM's Ex. 8, at 4.

Greenwich issued #45035259 on July 2, 2001, to cover ROW OCS-G 11181.[1]  BOEM's Ex. 9.  Bond #45035259 did not contain the same "unconditional" language, but did state that "the principal and surety agree that the neglect or forebearance [sic] of the United States in enforcing, as against the holder of the grant the payment of rentals or the performance of any other covenant, condition or agreement of the grant, shall not, in any way, release the principal and surety, or either of them, from any liability under this bond."  BOEM's Ex. 9, at 5.

Tri-Union Development Corporation filed for bankruptcy in 2003.  Case No. 09-44908.  Tri-Union's chapter 11 Plan was confirmed on September 30, 2004.  No. 03-44909, ECF No. 6.  The Plan provided for procedures to address Tri-Union's P&A obligations.  PEP was the plan agent for Tri-Union and the 100% owner of PEG.

---

[1] Greenwich denies that #4503529 covers the ROW.  The Court need not decide this issue.

The Plan incorporated and approved settlement agreements with numerous parties related to the P&A obligations, including PEP; Greenwich; Apache; and the Minerals Management Service (predecessor to BOEM).   No. 03-44909, ECF No. 6.   The Court found that the compromises among the parties were integral to the transactions in the Plan and essential to satisfy claims that were central to the reorganization process.  No. 03-44909, ECF No. 6.

Tri-Union, PEP, Greenwich, Apache, and several other parties entered into the Term Sheet, which laid out general terms for the completion of the P&A obligations.  PEP was to complete the P&A obligations, and other parties were to provide and administer escrow funds. Greenwich's Ex. B.  The P&A obligations were to be completed in two phases:  Phase 1 and Phase 2.  Greenwich's Ex. A, at 10-12.  The following properties were to be plugged, abandoned, and otherwise decommissioned during Phase 1:

- Galveston 211

- High Island 261/262

- High Island A126/127

- High Island A129

- High Island A236/A224

Greenwich's Ex. B.

Phase 2 would include the following properties:

- South Timbalier 162

- High Island A537/556

Greenwich's Ex. B.

The properties to be plugged and abandoned as part of Phase 2 were the properties on which Greenwich issued the bonds.  The Term Sheet required Greenwich to maintain the bonds in full force and effect.  Greenwich's Ex. B.

Under the Term Sheet, PEP was obligated to enter into "a mutually agreed to all inclusive defined fee Turnkey Contract for the complete offshore well plugging and abandonment platform, facility, and pipeline removal, site clearance, and relating decommissioning." Greenwich's Ex. B, at 1.  The Term Sheet provided that "Palm shall be an independent contractor, and have sole responsibility for the performance and implementation of the Turnkey Contract satisfying the P&A Obligations under this Agreement."  Greenwich's Ex. B, at 9.

The Turnkey Agreement, entered into by PEP, PEG, and Tri-Union, with the signatories to the Term Sheet as third-party beneficiaries, laid out more specific terms for the completion of the P&A obligations.  Greenwich's Ex. A.  Under the Turnkey Agreement, PEG was responsible for performing the P&A obligations.  Apache's Ex. 16, at 10; Greenwich's Ex. A, at 10.  The signatories to the Term Sheet were given the right to demand PEG's performance under the Turnkey Agreement.  Greenwich's Ex. A, at 8.

PEP and PEG would be paid from the Phase 1 Escrow to complete the Phase 1 obligations.  Apache's Ex. 16, at 10; Greenwich's Ex. A, at 12.

Phase 2 of the P&A obligations was to be paid for from two escrow funds: the Phase 2 Escrow and the Apache Escrow.  The Term Sheet states:

> Payment to Palm for Phase 2 work (totaling Six Million Six Hundred Thousand Dollars ($6,600,000)) will be made as required from the Phase 2 Escrow and the Apache Escrow, as the case may be, in accordance with the terms of the Turnkey Contract and the respective Phase 2 Escrow and the Apache Escrow to be negotiated upon compliance with MMS regulations and certification requirements attributable to each of the Phase 2 properties'

Obligations.  Palm may also utilize the Phase 2 Escrow to secure and pay for work commitments to vendors with the consent of Greenwich.  Palm may also utilize the Apache Escrow to secure and pay for work commitments to vendors with the consent of Apache after consultation with Greenwich.

Greenwich's Ex. B, at 6.

The Phase 1 P&A obligations were completed.  ECF No. 1, at 5; ECF No. 32, at 4; ECF No. 53, at 8.

On October 18, 2007, PEG, acting as plan agent for Tri-Union, filed a motion to close the chapter 11 case.  ECF No. 1505.  The Court closed the case on November 21, 2007, ECF No. 1511.

On November 1, 2010, PEG and Tri-Union filed a motion to reopen the bankruptcy case, asserting that Greenwich had repeatedly refused to transfer funds into Tri-Union's operating account to allow the Phase 2 P&A obligations to be completed.  ECF No. 1521, at 4.  PEG and Tri-Union sought to reopen the case and to have the Court enter an order enjoining Greenwich and Apache from taking any steps to liquidate or transfer funds from the Phase 2 Escrow or the Apache Escrow.  ECF No. 1521, at 7.  The Court reopened the case on December 7, 2010.  ECF No. 1532.

PEG and Tri-Union filed this adversary proceeding on January 25, 2011, suing Greenwich, Apache, and Nippon Oil Exploration U.S.A. Limited.[2]  PEG and Tri-Union assert claims for detrimental reliance and breach of contract against Greenwich and seek a money judgment.  ECF No. 1, at 9-12.  PEG and Tri-Union sue Apache for breach of contract, seeking a money judgment and injunctive relief requiring Apache to undertaking all remaining decommissioning activities associated with the South Timbalier Block 162 and High Island

---

[2] Nippon was dismissed as a party on November 4, 2011.  ECF No. 99.

blocks A-537/556.  ECF No. 1, at 12-14.  PEG and Tri-Union also seek injunctive relief against Greenwich and Apache, requesting that they be enjoined from taking any steps to liquidate or transfer funds in the Phase 2 Escrow or Apache Escrow until the Court determines whether unpaid vendors should be reimbursed for their contribution to the decommissioning obligations. ECF No. 1, at 14-15.  Finally, Tri-Union and PEG seek a declaratory judgment terminating all further responsibilities and liabilities with the remaining decommissioning activities on the Phase 2 properties.

Greenwich filed an answer on June 28, 2011.  ECF No. 32.  Greenwich asserts counterclaims against Tri-Union, PEG, and PEP, cross-claims against Apache, and a third-party complaint against BOEM, along with the United States Department of the Interior; Michael Bromwich, the Director of BOEM; and Kenneth Lee Salazar, the Secretary of the Interior (collectively, "other Third-Party Defendants").  ECF No. 32, at 30.

On February 8, 2012, BOEM filed a motion to dismiss third-party complaint, or for summary judgment; alternatively, to defer to the Interior Board of Land Appeals (IBLA).  ECF No. 116.  Greenwich filed a response on April 9, 2012.  ECF No. 128.  BOEM filed a reply on May 14, 2012.  ECF No. 142.

BOEM argues that the Court should dismiss or grant summary judgment as to Greenwich's claims against BOEM.  Greenwich asserts that BOEM breached its duties under the Term Sheet and Plan to timely enforce the P&A obligations; BOEM asserts that it has no such duties.  In the alternative, BOEM argues, the Court should stay the proceedings pending the outcome of an appeal before the IBLA.  The pending proceeding before the IBLA involves the issues of whether BOEM complied with the regulations and terms of the bonds in issuing its forfeiture orders, whether Tri-Union performed its decommissioning obligations on ROW OCS-

G 11181, and whether the ROW OCS-G 11181 is covered by the Greenwich bond.  ECF No. 116, at 19; BOEM's Ex. 17.

The Court held a hearing on the motion on May 10, 2012.   The hearing was continued to June 6, 2012.  ECF No. 152.  Apache filed a supplemental brief on June 20, 2012.  ECF No. 153.

## Summary Judgment Evidence

BOEM provides the following summary judgment evidence:

- Exhibit 1: Excerpts of Fourth Amended Plan of Reorganization

- Exhibit 2:  Excerpts of Order Confirming Fourth Amended Plan of Reorganization

- Exhibit 3:  Final Proposed Turnkey Proposal

- Exhibit 4:  PEG and Tri-Union's Complaint

- Exhibit 5:  Greenwich's Motion to Dismiss

- Exhibit 6:  Greenwich's Answer, Counterclaim against Tri-Union, PEG, and PEP, Cross-Claim against Apache, and Third-Party Complaint against BOEM

- Exhibit 7:  BOEM's  Answer  to  Third-Party Complaint/Counterclaim

- Exhibit 8:  BOEM's Motion to Dismiss Exhibit 1 – P&A Surety Bonds

- Exhibit 9:  BOEM's Motion to Dismiss Exhibit 2 – ROW Surety Bond

- Exhibit 10:  BOEM's Motion to Dismiss Exhibit 3 – BOEM December 13, 2005 Letter

- Exhibit 11:  BOEM's Motion to Dismiss Exhibit 4 – Tri-Union June 26, 2006 Letter

- Exhibit 12:  BOEM's Motion to Dismiss Exhibit 5 – BOEM August 23, 2006 Letter

- Exhibit 13:  BOEM's Motion to Dismiss Exhibit 6 – BOEM April 29, 2011 Letter (admitted for notice only)

- Exhibit 14:  BOEM's Motion to Dismiss Exhibit 7 – BOEM May 20, 2011 Letter (admitted for notice only)

- Exhibit 15:   BOEM's Motion to Dismiss Exhibit 8 – Greenwich May 24, 2011 Letter

- Exhibit 16:  BOEM's Motion to Dismiss Exhibit 9 – BOEM June 3, 2011 Letter (admitted for notice only)

- Exhibit 17:   BOEM's Motion to Dismiss Exhibit 10 – Greenwich June 27, 2011 Letter (admitted for notice only)

Greenwich provides the following summary judgment evidence:[3]

- Exhibit A:  Turnkey Service Agreement

- Exhibit B:  Term Sheet

- Exhibit C:  Notice of Appearance and Request for Notice

- Exhibit D:   United States' Answer to Third-Party Complaint and Counterclaim against Greenwich Insurance Company

- Exhibit E:   Letter from BOEM to Tri-Union and PEP, December 13, 2005

- Exhibit F:  Letter from Tri-Union and PEP to BOEM, June 26, 2006

- Exhibit G:  Letter from BOEM to Tri-Union and PEP, August 23, 2006

- Exhibit H:  Letter to Greenwich from BOEM, April 29, 2011

- Exhibit I:  Letter to Greenwich from BOEM, May 20, 2011

- Exhibit J:  Letter to Greenwich from BOEM, June 3, 2011

---

[3] Several of Greenwich's exhibits relate to its response to Apache's motion to dismiss/motion for summary judgment against Greenwich, not BOEM's motion.  The June 6, 2012 hearing related to both BOEM's motion and Apache's motion.

- Exhibit K:  Letter from Tri-Union and PEP to BOEM, June 11, 2009

- Exhibit L:   Greenwich's First Set of Interrogatories and Requests for Production to Apache

- Exhibit M:   Apache's Objections and Responses to Greenwich's First Set of Interrogatories and Requests for Production to Apache

- Exhibit N:  Privilege Log Produced by Apache in Response to Greenwich's First Set of Interrogatories and Requests for Production to Apache

- Exhibit O:  Composite Exhibit:  Selected documents from Apache's document corporation.  Documents 1-5 and 11 were admitted as part of the summary judgment record.  Documents 6-10 were admitted for the limited purposes of showing that Greenwich and Apache both participated in the drafting of the agreements.

- Exhibit P:   Greenwich's First Set of Interrogatories and Requests for Production to BOEM

- Exhibit Q:  Composite Exhibit:   Selected documents from BOEM's document production

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate:  (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  A genuine dispute of material fact is one that could affect the

outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[4] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403. Upon

---

[4] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattret*, 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Analysis

BOEM's motion for summary judgment, with respect to all but one claim, turns on the issue of whether BOEM had any duty to Greenwich to enforce the timely performance of the P&A obligations.

Greenwich's third-party complaint asserts the following claims against BOEM:

(1) breach of contract, based on BOEM's alleged failure to enforce the P&A obligations;

(2) declaratory judgment that BOEM's and other Third-Party Defendants' failure to timely enforce the 2005 Order, the Modification, and the Incident of Noncompliance breached BOEM's obligations under the Plan and Term Sheet;

(3) declaratory judgment that BOEM's and other Third-Party Defendants' general failure to require Tri-Union, PEP, and Peg to timely perform the P&A obligations and otherwise to comply with the Plan, Term Sheet, and/or Turnkey Agreement constituted a breach of the Plan and Term Sheet;

(4) declaratory judgment that Greenwich has no liability to BOEM or other Third-Party Defendants on the bonds, the Term Sheet, and/or the Plan as a result of BOEM's and other Third-Party Defendants' breaches;

(5) declaratory judgment that BOEM's and other Third-Party Defendants' right to seek forfeiture of the bonds has been waived and released as a result of BOEM's and other Third-Party Defendants' breaches;

(6) declaratory judgment that if Greenwich must forfeit all or a portion of the bonds to BOEM, Greenwich shall be subrogated to BOEM and the other Third-Party Defendants against any party under the Term Sheet, Plan, Turnkey Agreement, or any other agreement.

ECf No. 32, at 35-36.  Greenwich alleges that BOEM had a duty under the Plan and Term Sheet to enforce Tri-Union, PEP, and PEG's P&A obligations.  ECF No. 32, at 33.  Greenwich alleges that BOEM breached this duty by failing to require timely completion of the P&A obligations. ECF No. 32, at 33.  Specifically, Greenwich alleges, BOEM failed to enforce its 2005 Order requiring completion of the P&A obligations and then failed to enforce the deadline set forth its Modification of the 2005 Order.  ECF No. 32, at 33.

On December 13, 2005, BOEM sent a letter to Tri-Union and PEP ("2005 Order") requiring them to send a schedule and timetable for the timely completion of platform removal and site clearances operations with respect to Lease OCS-G 1249.  Greenwich's Ex. E.  On June 26, 2006, Tri-Union and PEP sent a letter to BOEM, noting that BOEM had granted Tri-Union's request for an extension through June 30, 2006 to provide a schedule for platform abandonment,

removal, and site clearance operations.  Greenwich's Ex. F.  Tri-Union and PEP requested an additional extension through March 2007.  Greenwich's Ex. F.  BOEM responded on August 23, 2006, approving another time extension through March 31, 2007 ("Modification").  Greenwich's Ex. G.

On June 11, 2009, Tri-Union and PEP sent a letter to BOEM regarding Right-of-Way OCS-G 11181, requesting approval to relinquish the right-of-way easement on a 6-inch gas pipeline.  Greenwich's Ex. K.  The pipeline segment "was taken out of service during 2001 by pigging, flushing, and isolating the segment from the process equipment."  Greenwich's Ex. K.  Tri-Union and PEP proposed abandonment operations to commence "as early as July 15, 2009."  Greenwich's Ex. K.

On April 29, 2011, BOEM sent a letter to Greenwich, informing Greenwich that Tri-Union was in default for failure to comply with the 2005 Order and with the terms and conditions of its lease.  Greenwich's Ex. H.  BOEM stated that Tri-Union's default called for the forfeiture of Greenwich's two bonds on Lease OCS-G 1249:  #45035257, in the amount of $2,500,000.00; and #45035256, in the amount of $1,100,000.00.  Greenwich's Ex. H.  On May 20, 2011, BOEM sent another letter to Greenwich stating that Tri-Union was in default on the ROW OCS-G 11181 for failure to comply with an order issued on August 13, 2009 and with the terms and conditions of its ROW.  Greenwich's Ex. I.  The default on the ROW called for the forfeiture of Greenwich's bond on the ROW:  #45035259, in the amount of $300,000.00.

Greenwich sent a letter on May 24, 2011.  BOEM's Ex. 15.  Greenwich stated that it had not received the August 13, 2009 letter referencing decommissioning ROW OCS-G 11181.  BOEM's Ex. 15.  Greenwich noted that the April and May letters had stated that Greenwich could avoid forfeiture of the surety bonds if, within five working days, Tri-Union or its surety

agreed to and demonstrated that it would bring the lease into compliance within the prescribed time frame.  BOEM's Ex. 15.  Greenwich stated that it had not received the April letter until after the deadline had passed.  BOEM's Ex. 15.  Greenwich further stated that it was unsure "whether the pipeline was ever a Tri-Union obligation or covered by any active bond."  BOEM's Ex. 15.

BOEM sent another letter on June 3, 2011 calling for the forfeiture of all three of Greenwich's bonds.  BOEM's Ex. 16.  The June 3, 2011 letter stated that the August 13, 2009 letter had conveyed approval to decommission ROW OCS-G 11181 in accordance with 30 C.F.R. § 250.1751[5] and ordered Tri-Union to cease transporting hydrocarbons through the ROW OCS-G 11181 pipeline within 180 days of August 13, 2009.  BOEM's Ex. 16.  The June 3, 2011 letter stated that Tri-Union was in default as to Lease OCS-G 1249 and ROW OCS-G 11181. BOEM's Ex. 16.

Greenwich now asserts that BOEM had a duty under the Term Sheet and Plan to enforce the P&A requirements against Tri-Union, PEG, and PEP.  Greenwich argues that BOEM's failure to enforce the requirements prejudiced Greenwich.

The Term Sheet States:

> In the event that all parties having financial responsibility and duties under this Agreement execute the Agreement, the MMS will

---

[5] 30 C.F.R. § 250.1751 states:

> You must do the following to decommission a pipeline in place:
> (a) Submit a pipeline decommissioning application . . . .
> (b) Pig the pipeline, unless the Regional Supervisor determines that pigging is not practical;
> (c) Flush the pipeline;
> (d) Fill the pipeline with seawater;
> (e) Cut and plug each end of the pipeline;
> (f) Bury each end of the pipeline at least 3 feet below the seafloor or cover each end with protective concrete mats, if required by the Regional Supervisor; and
> (g) Remove all pipeline valves and other fittings that could unduly interfere with other uses of the OCS.

agree to an extension of existing deadlines until 30 days after the Effective Date to facilitate the approval of the Agreement under the Plan, including the Turnkey operations. Palm shall be required to submit its P&A schedule to be approved by the MMS. Further MMS extensions will be based on the approved schedules.

Greenwich's Ex. B, at 9.

Greenwich and MMS did not sign the Turnkey Agreement. The Turnkey Agreement was entered into among PEG, PEP, and Tri-Union. The Turnkey Agreement stated, "Except for the signatories to the Term Sheet who shall be third party beneficiaries of the obligations of Palm hereunder, no other person shall acquire or have any rights under or by virtue of this Agreement." Greenwich's Ex. A, at 8.

The Turnkey Agreement states:

> The P&A Activities on the Phase 2 Properties are to be commenced with sufficient time such that it will be completed upon the earlier of (i) when the MMS requires completion be due or (ii) in the discretion of Palm, when the Phase 2 Escrow, as defined below, has sufficient funds to pay Palm its compensation hereinafter provided on all of Phase 2 Properties (with full funding of the Phase 2 Escrow estimated to be in approximately 30-36 months); provided, however, subject to the prior full funding of the Phase 2 Escrow, the commencement of P&A Activities on the HI 556/537 blocks shall commence such that it can be completed no later than 36 months after the Plan Effective Date and the commencement of P&A Activities on the ST 162 block shall commence such that it can be completed no later than 48 months after the Plan Effective Date.

Greenwich's Ex. A, at 11. The Turnkey Agreement also states:

> COMPLETION DATE:
>
> Palm shall submit to MMS for approval a schedule for P&A Activities for the Phase 1 Properties and the Phase 2 Properties, and Palm shall complete all such P&A Activities in accordance with the schedule approved by the MMS.

Greenwich's Ex. A, at 13.

Greenwich contends that under the Term Sheet, BOEM was obligated to take action to ensure that PEG completed the P&A obligations no later than 48 months after the Effective Date, which was October 21, 2004.  No. 03-44908, ECF No. 1139.

### Primary Jurisdiction

The Court first addresses BOEM's argument that the IBLA should exercise primary jurisdiction over the bond dispute.  The doctrine of primary jurisdiction states that when a claim contains some issue "within the special competence of an administrative agency," courts may make a referral to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling.  *Northwest Airlines, Inc. v. Cnty. of Kent, Mich.*, 510 U.S. 355, 367 (1994) (quoting *Reiter v. Cooper*, 507 U.S. 258, 268 (1993)).

However, if the Court can resolve the issue "using the plain language of the [pertinent regulations] and the ordinary rules of construction," then the Court may resolve the issues without first referring the matter to IBLA.  *Advance United Expressways, Inc. v. Eastman Kodak Co.*, 965 F.2d 1347, 1353 (5th Cir. 1992).  Here, the Court can resolve the issue using the unambiguous language of the parties' agreements.  This is a dispute about the parties' obligations under the Term Sheet; there is no specialized technical issue within the unique competence of IBLA.

Moreover, the disputes in this adversary proceeding concern interpretation and enforcement of the Plan.  The duties that Greenwich alleges BOEM breached are based on the Term Sheet, incorporated into the Tri-Union's bankruptcy plan.  The Court has jurisdiction to interpret or enforce its own orders.  *See Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders.").

*Need for More Discovery*

Greenwich alleges that it should be given the opportunity to undertake additional discovery.  However, the primary dispute, with respect to the majority of Greenwich's claims, turns on interpretation of the Term Sheet.  Because the Court finds that the Term Sheet is unambiguous, additional discovery is irrelevant to the interpretation.

*ROW Abandonment*

Greenwich establishes genuine disputes as to whether the ROW was properly abandoned and whether the ROW was covered by bond #45035259.  Greenwich's Exs Q-1, Q-2 & Q-3; BOEM's Ex. 15.

In its response to BOEM's motion for summary judgment, Greenwich argues that "Greenwich has, for pleading purposes, adequately alleged that BOEM breached the Bonds, the Plan and Term Sheet by trying to forfeit the Bonds without first showing that an 'event of default' had occurred under them."  ECF No. 128, at 26.  However, Greenwich does not plead in its third-party complaint that BOEM breached the bonds, the Plan, and the Term Sheet by trying to forfeit the bonds without showing an event of default.  All of the alleged breaches in the third-party complaint relate to BOEM's alleged failure to enforce timely completion of the P&A obligations.  The third-party complaint contains no allegations regarding the later-alleged breach of the bonds.

The disputes regarding the bond coverage and the abandonment of the ROW therefore are not genuine disputes of *material* fact.  Because all of Greenwich's claims for declaratory judgment with respect to the forfeiture of the bonds are predicated on BOEM's alleged breach of its duties under the Term Sheet and Plan, not on Greenwich's later assertion that Tri-Union, PEP, and PEG did not default on their obligations, these disputes are not material.

***BOEM's Duties Under the Term Sheet***

The Court first notes that the bonds #45035257 and #45035256 are unconditional bonds, and bond #45035259 provides that Greenwich's and Tri-Union's liability under the bond would not be released by any neglect or forbearance by the United States.  BOEM's Exs. 8 & 9.  Greenwich argues that the Term Sheet and Plan established an obligation on BOEM's part to timely enforce the P&A obligations.

The Court need not decide whether the terms of the bonds would have allowed the modification or setoff of Greenwich's obligations based on a breach of BOEM's duties under the Term Sheet.  The Term Sheet did not establish a duty for BOEM to ensure the timely performance of the P&A obligations.  Even if Greenwich is harmed by the nonperformance of the P&A obligations, it has no claim against BOEM for the breach of its duties under the Term Sheet.

A surety may have a claim against the government for impairing the surety's remedies or increasing its risk.  In *United Pacific Insurance Company v. United States Department of the Interior*, the Central District of California held that a surety on a bond to ensure payment on contracts for the purchase of royalty oil, issued in favor of MMS (BOEM's predecessor), could offset its obligation under the bond by the amount that MMS had impaired the surety's rights by failing to file a timely bankruptcy claims.   "Accordingly, to the extent that MMS's failure to timely perfect a claim resulted in a decreased recovery from the Powerine Bankruptcy Estate, MMS's obligation as surety must be reduced by the same amount. . . . To the extent that the surety's remedies have been impaired or its risk or exposure has been increased, the surety's obligation should be diminished accordingly." *United Pacific*, 70 F. Supp. 2d 1089, 1099 (C.D. Cal. 1999).

But the surety does not have a right to a diminished obligation against the United States unless the United States has breached its duties. *See Nova Cas. Co. v. United States*, 72 Fed. Cl. 755, 760, 762-63 (2006) (holding that the government as an obligee on a bond "owes no duty as a stakeholder to withhold progress payments" absent notice of a default, and for a surety to recover without notice, the surety "must show that the Government departed from the terms of its contract.") (quoting *Lumbermens Mut. Cas. v. United States*, 67 Fed. Cl. 253 (2005), *rev'd*, 654 F.3d 1305 (Fed. Cir. 2011)).

Greenwich asserts that BOEM had an affirmative duty, under statutes, regulations, and the Term Sheet, to ensure that PEG completed the P&A obligations. Assuming that BOEM has a general affirmative duty to enforce its regulations and oversee P&A activities, Greenwich may recover only if it shows that BOEM acted outside the scope of its discretion.

Greenwich does not show that BOEM was obligated under the Term Sheet to ensure timely completion of the P&A obligations or that BOEM's discretion in exercising is regulatory authority was limited by the Term Sheet. The Term Sheet is not ambiguous. The Court therefore interprets the unambiguous terms of the contract at the summary judgment stage. *See, e.g., Travis Cnty., Tex. v. Flint Hills Res., L.P.*, 456 F. App'x 410, 413 (5th Cir. 2011) (holding that under Texas law, "[i]nterpretation of an unambiguous contract is a matter of law, also subject to de novo review"); *Apache Corp. v. W & T Offshore, Inc.*, 626 F.3d 789, 794 (5th Cir. 2010) (holding that under Louisiana law, "the interpretation of an unambiguous contract is an issue of law for the court"); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 729 n.14 (2d Cir. 2010) ("New York law is substantially similar to Texas law in this regard. Under New York law, whether or not a writing is ambiguous is a question of law to be resolved by the courts.") (internal quotation marks and brackets omitted). A contract is ambiguous if the

provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings. *AEP Energy*, 6262 F.3d at 729 n.14.

The Term Sheet is unambiguous with respect to whether BOEM had a duty to enforce the deadlines. Although the Term Sheet established general deadlines for PEG, the Term Sheet did not establish any obligation for BOEM to require compliance with the deadlines. Greenwich essentially argues that because BOEM was a party to the Term Sheet, and because the Term Sheet set forth deadlines, BOEM was implicitly obligated to enforce the deadlines. The Court does not interpret the Term Sheet as implying such a duty.

No contractual provision could reasonably be read as implying that BOEM had a duty to enforce the deadlines. The provision of the Term Sheet that sets forth the deadlines for completion is explicitly labeled "A. Palm Obligations – All Inclusive Fee as Defined in the Turnkey Contract." Nothing in Section A or the Term Sheet—or elsewhere in the Term Sheet— indicates that meeting the deadline is in any way an obligation of BOEM. Moreover, the Term Sheet allows for the possibility of "[f]urther MMS extensions . . . based on the approved schedules." Greenwich's Ex. B, at 9. The Term Sheet gives MMS the authority to set deadlines for PEG, but no contractual provision implies that MMS has any obligation to Greenwich with respect to the deadlines.

The Turnkey Agreement also does not establish such a duty. The Turnkey Agreement gave BOEM (along with the other signatories to the Term Sheet, including Greenwich) the right to enforce PEG's obligations under the Turnkey Agreement, but it did not establish new duties for the Term Sheet signatories who were not signatories to the Turnkey Agreement. BOEM and Greenwich are third-party beneficiaries of the Turnkey Agreement, not parties. They did not sign the Turnkey Agreement; the Turnkey Agreement benefits, but does not bind, them. *See*

*Marinor Assocs., Inc. v. M/V PANAMA EXPRESS*, 2011 WL 710616, at *3 (S.D. Tex. 2011) ("[T]o become subject to the *obligations* of a contract, a third party must either accept to be bound to the contract or be bound through agency principles); *In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d 56, 72 (S.D.N.Y. 2009) (holding that intended beneficiary of a bill of lading was not bound by contractual obligations absent a showing that the beneficiary exhibited acceptance to be bound or was bound through an agency relationship). Although the Term Sheet indicates acceptance of the general terms for completing the P&A obligations that were the foundation for the specific terms of the Turnkey Agreement, there is no provision of the Term Sheet that binds the signatories to any *obligations* that would be laid out in the Turnkey Agreement.

Neither the Term Sheet nor the Turnkey Agreement explicitly or implicitly establishes a duty for BOEM to enforce PEG's deadlines for the P&A obligations. BOEM's alleged failure to timely enforce the 2005 Order, the Modification, and the Incident of Noncompliance could not have breached BOEM's obligations under the Term Sheet and Plan, because BOEM had no such duty of enforcement under the Term Sheet and Plan.

BOEM also did not have a duty under the applicable statutes and regulations to ensure that the P&A obligations were completed within the timeline set out in the Term Sheet and Turnkey Agreement. The authority to promulgate rules and regulations governing plugging and abandonment is delegated by Congress to the Secretary of the Interior and, by the Secretary, to BOEM. 43 U.S.C. §§ 1331(a); 1332; 1334(a); 1337(a); *Noble Energy, Inc. v. Salazar*, 671 F.3d 1241, 1242 (D.C. Cir. 2012); *see* 30 C.F.R. § 250.101 *et seq.*; 30 C.F.R. § 250.1700 *et seq.* (Subpart Q) (regulating decommissioning activities). BOEM may issue orders regarding P&A obligations, and those orders are reviewed for abuse of discretion. *Id.* at 1244 (citing 5 U.S.C. § 706(2)(A)).

Greenwich cites no statute or regulation limiting BOEM's discretion in enforcing the P&A obligations. Because BOEM had the authority to modify deadlines at its own discretion, BOEM did not violate any implied duty to Greenwich in doing so.

Because BOEM did not have a contractual duty to Greenwich to enforce the deadlines, the Court grants summary judgment to BOEM as to all the claims predicated on BOEM's alleged breach of this duty:

(i)     Greenwich's breach of contract claim,

(ii)    Greenwich's claim for declaratory judgment that BOEM's and other Third-Party Defendants' failure to timely enforce the 2005 Order, the Modification, and the Incident of Noncompliance breached BOEM's obligations under the Plan and Term Sheet;

(iii)   Greenwich's claim for declaratory judgment that BOEM and the other Third-Party Defendants breached obligations under the Plan and Term Sheet,

(iv)    Greenwich's claim for declaratory judgment that Greenwich has no liability because of BOEM's and the other Third-Party Defendants' breaches of the Term Sheet and Plan, and

(v)     Greenwich's claim for declaratory judgment that BOEM and the other Third-Party Defendants have waived the right to seek forfeiture of the bonds as a result of BOEM's breach of the Term Sheet and Plan.

*Estoppel*

Greenwich argues that BOEM lacked the authority to seek forfeiture of the bonds because it failed to enforce the 2005 Order, the Modification, and the August 13, 2009 Order. ECF No. 128, at 28.  Greenwich argues that BOEM is now equitably estopped from seeking forfeiture of the bonds.  ECF No. 128, at 28-29.

The Court interprets the estoppel argument as another theory to support Greenwich's declaratory judgment claims.  The theory fails.

The elements of estoppel are:  (1) knowledge of the true facts by the party to be estopped; (2) intent to induce reliance or actions giving rise to a belief in that intent; (3) ignorance of the true facts by the relying party; and (4) detrimental reliance.  *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991).  Additionally, for the government to be estopped, there must be affirmative misconduct, not mere negligence, and a serious injustice outweighing the damages to the public interest of estopping the government.  *Id.*

As discussed above, there is no genuine dispute of material fact as to whether BOEM breached any duty.  Greenwich therefore cannot support its allegation of affirmative misconduct. Estoppel does not apply.

*Subrogation*

Greenwich asserts one claim that is not dependent on its assertion that BOEM breached a duty under the Term Sheet and Plan.  Greenwich seeks a declaration that "to the extent that Greenwich must forfeit all or any portion of the Bonds to BOEMRE, then Greenwich shall be subrogated to, and have all the rights of BOEMRE and the other Third-Party Defendants, at law or equity, against any party under the Term Sheet, Bankruptcy Plan, Turnkey Agreement or any other agreement."  ECF No. 32, at 36.

BOEM asserts that "Greenwich cites no authority, and indeed it cannot, for such a broad right to subrogation." ECF No. 116, at 18. BOEM also argues that Greenwich is subrogated only as against Tri-Union, the debtor. Greenwich cites the Court's earlier opinion in *Tri-Union*, 314 B.R. at 622. *Tri-Union* does not establish that subrogation rights are only available with respect to the debtor. *Id.* That opinion did not address the issue of whether a surety may be subrogated to parties other than the debtor; instead, the Court dealt with the issue of whether Greenwich could be subrogated to BOEM's police powers, or only its claim and priority. The Court held that under 31 U.S.C. § 9309, Greenwich was subrogated only to the claim and priority of BOEM. *Id.*

BOEM argues that 31 U.S.C. § 9309 does not allow Greenwich to be subrogated against any party but the debtor. The statute codifies the priority of sureties when a principal obligor is insolvent or dies having assets insufficient to pay debts. However, a surety's potential right to subrogation is not dependent on the statute. *See Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 136-37 (1962) ("Traditionally sureties compelled to pay debts for their principal have been deemed entitled to reimbursement, even without a contractual promise such as the surety here had. And probably there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed."). Section 9309's purpose is to deal with the more complicated priorities of a subrogee against an insolvent party. The statute does not implicitly exclude a surety from subrogation against third parties; it simply does not mention it.

BOEM also argues that "for Greenwich to seek subrogation rights is premature as it has not paid on the Bonds, the P&A work has not been completed, and this Court has not determined the responsible parties under the documents." ECF No. 142, at 15. The Court agrees. By a

separate memorandum opinion and order issued on this date, the Court grants summary judgment for Apache as to Greenwich's claim for subrogation against Apache.

Greenwich seeks subrogation rights against "any party under the Term Sheet, Bankruptcy Plan, Turnkey Agreement or any other agreement." Elsewhere in its answer, Greenwich asserts a subrogation claim specifically against Apache.  ECF No. 32, at 30.  However, Greenwich's subrogation claim against BOEM, does not assert subrogation rights against any particular party. Although Fed. R. Civ. P. 14 allows parties to seek conditional judgments, a party may not seek a conditional judgment against a yet-to-be-named, and possibly nonexistent, party.  *See* Fed. R. Civ. P. 14 ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or party of the claim against it."); *see Traveler's Ins. Co. v. Busy Elec. Co.*, 294 F.2d 139, 145 (5th Cir. 1961) ("Relief need not be thwarted by the nature of indemnity which ordinarily imposes an obligation to reimburse another only after sustaining a loss.  This may be handled either by a conditional decree or the entry of a declaratory judgment.") (citations omitted).  Greenwich may not assert a generalized subrogation claim against hypothetical parties; such a claim is premature.

The facts of this case demonstrate a primary reason why such a ruling would be premature.  The subrogation rights of one liable party against another liable party will be circumscribed by their rights in the absence of subrogation.  That is what occurred with respect to Apache.  The Court will not define the extent of Greenwich's subrogation rights without a full understanding of the context in which they are asserted.

Moreover, if Greenwich sought a conditional judgment as to its subrogation rights against a particular party, the claim would be an impleader against that party, not against BOEM. Greenwich's subrogation claim fails to state a claim against BOEM.  The Court therefore

dismisses the subrogation claim as premature against all parties other than Apache.  The Court's separate memorandum opinion deals with the Apache subrogation issue.

**Conclusion**

By separate order, all claims against BOEM, the United States Department of Interior, Michael Bromwich, and Kenneth Lee Salazar will be dismissed or denied.

SIGNED **September 3, 2012.**

Marvin Isgur<br>
UNITED STATES BANKRUPTCY JUDGE